IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABORERS' COMBINED FUNDS OF | ) | |
| WESTERN PENNSYLVANIA, *et. al*, | ) | CIVIL ACTION NO. 2:15-1693 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| KATHLEEN JENNINGS, SHERI | ) | |
| RUMMEL, and JAMES REDDEN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court are two motions for summary judgment, one filed by Plaintiff

Laborers' Combined Funds of Western Pennsylvania, *et. al* (the "Funds") (ECF No. 37) and one

filed by Defendant Sheri Rummel (ECF No. 43). For the reasons explained below, the Court will

**grant** both motions.

### II. Jurisdiction

This Court has subject matter jurisdiction over the Funds' Employee Retirement Income

Security Act of 1974 ("ERISA") claims as they arise under federal law. 28 U.S.C. § 1331. The Court

has supplemental jurisdiction over the Funds' state law claims pursuant to 28 U.S.C. § 1367.

### III. Background

This dispute arises from a construction company's failure to remit salary withholdings

back to the Funds as required under governing collective-bargaining agreements ("CBAs") and

Trust Agreements. The Court will first summarize the course of the litigation before evaluating the relevant facts.

On March 3, 2017, the Funds filed their Amended Complaint[1] against Kathleen Jennings, Sheri Rummel, and James Redden, former employees of On Call Flagging, Inc. ("On Call"), a construction company that signed a labor agreement with the Union Plaintiffs[2] that required On Call to remit employee benefit contributions to the Funds. (*See* ECF No. 17.) The Funds' Amended Complaint contains two counts against each defendant: one count for breach of fiduciary duty under ERISA and one count for common-law conversion. (*See id.* at ¶¶ 15-80.)

The Funds moved for default and default judgment against Redden, who failed to respond to the Amended Complaint. (*See* ECF Nos. 24, 26.) The Clerk of Court entered default (ECF No. 25) and this Court entered a default judgment. (ECF No. 27.) Accordingly, only claims against Jennings and Rummel remain unresolved at this time.

On September 29, 2017, the Funds filed for summary judgment against Defendant Jennings.[3] Pursuant to this Court's Scheduling Order entered on June 13, 2017, Jennings had thirty (30) days to file her response to the Funds' motion for summary judgment. (*See* ECF No. 33.) However, Jennings never filed a response.

---

[1] The Funds filed their original Complaint on December 23, 2015. (ECF No. 1.) The original Complaint only named Jennings as a defendant. (*See Id.*)

[2] The Union Plaintiffs are the Laborers' International Union of North America and the Laborers' District Council of Western Pennsylvania. (ECF No. 2 at ¶ 3.)

[3] The Funds do not move for summary judgment against Defendant Rummel.

On October 7, 2017, Defendant Rummel filed for summary judgment. (*See* ECF No. 43.) The Funds had thirty (30) days to respond to Rummel's motion. (*See* ECF No. 33.) However, the Funds never filed a response.

## IV. Legal Standard

### A. Summary Judgment

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of

material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

Federal Rule of Civil Procedure 56 governs summary judgment. *See* Fed. R. Civ. P. 56. Section (c) describes the "Procedures" a party must follow when moving for summary judgment. *Id*. Subsection (c)(1), titled "Supporting Factual Positions," requires that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Section (e) applies where a party fails to address a fact contained in the moving party's concise statement of material facts. Under Rule 56(e),

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> . . .
>
> (2) consider the fact undisputed for purposes of the motion; [or]
> (3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it . . . .

*Id.*; *see, e.g.*, *Cooper v. Martucchi*, No. 2:15-CV-00267-LPL, 2016 WL 1726113, at *2 (W.D. Pa. Apr. 28, 2016) (citing Fed. R. Civ. P. 56(e)(1)-(3)) (noting that "[w]here the non-moving party fails to respond to a summary judgment motion, that failure does not automatically result in the entry of summary judgment for the movant" and explaining that the Court may, however, "consider the asserted facts undisputed" and grant summary judgment in favor of the moving party if the undisputed facts establish that the movant is entitled to relief as a matter of law.)

Local Rule 56(E) provides . . . [that] the uncontroverted content of the movant's statement of material fact is deemed admitted and carries conclusive weight for the purposes of summary judgment motions." *Wylie v. TransUnion, LLC*, No. 3:16-CV-102, 2017 WL 4386404, at *3 (W.D. Pa. Sept. 29, 2017) (Gibson, J.); *see Westfield Ins. v. Detroit Diesel Corp.*, No. 3:10-CV-100, 2012 WL 1611311, at *1 (W.D. Pa. May 8, 2012) (deeming facts in moving party's concise statement of material facts admitted when opposing party failed to file a responsive concise statement of material facts); *see also Kitko v. Young*, No. CIV.A. 3:10-189, 2013 WL 5308016, at *1 (W.D. Pa. Sept. 20, 2013) (Gibson, J.) (holding that

5

"[f]acts insufficiently denied and not otherwise controverted, however, have been deemed admitted per Local Civil Rule of Court ("Local Rule") 56E.").

As noted above, Defendant Jennings never filed a responsive concise statement of material facts to the Funds' Concise Statement of Material Facts, and the Funds never filed a responsive concise statement of material facts to Defendant Rummel's Concise Statement of Material Facts. In accordance with Federal Rule of Civil Procedure 56(e) and Local Civil Rule of Court 56.E, the Court will deem all facts contained in (1) the Funds' Concise Statement of Material Facts (ECF No. 39) and (2) Defendant Rummel's Concise Statement of Material Facts (ECF No. 44) admitted.

Having deemed these uncontroverted facts contained in these concise statements of material facts admitted, the Court will next determine whether the Funds and Rummel have shown that they are entitled to summary judgment.

V. Discussion

A. The Funds' Motion for Summary Judgment

1. Uncontested Facts

Before evaluating the merits of the Funds' motion for summary judgment, the Court will review the facts that the Court deems admitted due to Defendant Jennings' failure to respond to the Funds' Concise Statement of Material Facts. The following facts are derived from the Funds' Concise Statement of Material Facts (ECF No. 39) unless otherwise noted.

The Funds "are employee fringe benefit plans" under ERISA. (ECF No. 39 at ¶ 1.) On Call is a construction company that was bound by two CBAs that required On Call to "submit monthly

6

reports with payment to the Funds for pension, medical, annuity, apprenticeship, industry and wage deductions for the benefit of employees covered under such agreements." (*Id.* at ¶ 3.) On Call was also bound by two Trust Agreements. (*Id.* at ¶ 4.)

The Trust Agreements provide that "[n]o Employer obligated to pay contributions shall have any right, title or interest to any sum payable by such Employer to the Fund, but not yet paid to the Fund[,]" and specify that "[t]itle to all monies paid into and/or due and owing the Fund shall be vested in the Find and/or its Trustees." ("Agreement and Declaration of Trust," ECF No. 40-6 at 8; "Trust Agreement and Pension Plan," ECF No. 40-7 at 30; *see also* ECF No. 39 at ¶ 5.) The Trust Agreements further provide that, for each month On Call fails to remit the employee benefit contributions to the Fund, On Call will be assessed interest, late charges and/or liquidated damages, and attorneys' fees equal to twenty (20) percent the delinquency. (ECF No. 40-6 at 8; ECF No. 40-7 at 29.)

"From May 2013 to October 2016, On Call employed laborers . . . who performed work covered by the CBAs, [but] On Call failed to pay [the Funds] all the fringe benefit contributions and wage deductions on behalf of On Call's laborers due for such work." (ECF No. 39 at ¶ 6.)

At all relevant times, Defendant Jennings was the sole shareholder and President of On Call. (*Id.* at ¶ 9.) Jennings "exercised discretionary authority and control" over On Call's finances. (*Id.* at ¶ 13.) Specifically, Jennings:

1. Paid all of On Call's bills and managed On Call's financials (*id.* at ¶ 13(a));
2. Possessed authority to determine which of On Call's bills would be paid and which would not be paid (*id.* at ¶ 13(b));

7

3. Signed loan documents for On Call (*id.* at ¶ 13(c));

4. Negotiated and signed documents for On Call (*id.* at ¶ 13(d));

5. Signed the CBAs between On Call and the Plaintiff Unions (*id.* at ¶ 13(e));

6. Maintained a debit card linked to On Call's "field account" (*id.* at ¶ 13(f));

7. "[R]eserved and exercised the right to review the debit card usage of employees of On Call" who also had debit cards linked to On Call's "field account" (*id.* at ¶ 13(g));

8. Personally guaranteed a credit line for On Call (*id.* at ¶ 13(h));

9. Personally borrowed money from On Call "on at least one occasion" when On Call was behind on its payments to the Funds (*id.* at ¶ 13(i));

10. With the exception of April 15, 2015 to October 6, 2015, Jennings[4] "had the sole authority to issue On Call checks on its operating account to the Funds at all times material" until On Call filed for Chapter 11 Bankruptcy on November 2, 2016 (*id.* at ¶ 13(j); *see also id.* at ¶ 8);

11. Signed "all checks" that the Funds received during the pertinent time period. (*Id.* at ¶ 13(k).)

Jennings "knew or should have known" that On Call owed monies to the Funds. (*Id.* at ¶ 18.) Jennings served as On Call's President. (*Id.*) Furthermore, On Call "submitted reports without payment to the Funds listing the amounts owed . . . ." (*Id.*) Moreover, "On Call received Auditor

---

[4] From April 15, 2015 to October 6, 2015, both Jennings and Rummel signed all checks, as explained *infra*. (ECF No. 39 at ¶ 15.)

Reports from the Funds listing the amounts of the audit deficiencies" that On Call owed to the Funds. (*Id.*)

From February 9, 2015 to October 6, 2015, On Call employed Defendant Rummel as its in-house Accountant/Accounts Administrator. (*Id.* at ¶ 10.) During this period, Rummel prepared the monthly reports that On Call submitted to the Funds. (*Id.* at ¶ 14.) While Rummel worked for On Call, both her and Jennings' signature appeared on the checks issued to the Funds. (*Id.* at ¶ 15.) After Rummel's employment terminated, only Jennings signed the checks. (*Id.*) During the period that Rummel worked for On Call, the Funds "received all the fringe[ payments] due, though some payments were late . . . ." (*Id.* at ¶ 17.) Accordingly, for the period that Rummel was employed by On Call, On Call only owes "liquidated damages and interest on the late payments . . . ." (*Id.*)

From March 2015 onwards, Jennings knew that On Call was struggling financially and that union workers were "losing their medical coverage with the Funds because of On Call's nonpayment of fringe benefits to the Funds." (*Id.* at ¶ 19.) Further, Jennings spoke by phone and in person with several representatives from the Funds regarding the delinquency that On Call owed to the Funds, such as James Wolcott, the Funds' Collection Manager, and Dierde Price, the Funds' auditor. (*Id.* at ¶ 20.)

Despite knowing that On Call owed delinquency payments to the Funds, Jennings "paid her own salary ahead of the pension and medical benefits contributions payable to the Funds for On Call's laborer employees." (*Id.* at ¶ 21.) At all relevant times, Jennings received her full On Call salary on a weekly basis. (*Id.* at ¶ 23.) Further, Jennings, Rummel, and Redden entered into

9

an agreement on April 15, 2015 that awarded Jennings a "consideration bonus" of $15,000 and increased Jennings' salary from $40,000 to $75,000. (*Id.* at ¶ 22.) The agreement also "assured payment" of Jennings' medical and retirement benefits. (*Id.*)

During the period when On Call was behind on its benefit contribution payments, Jennings personally borrowed money from On Call. (*Id.* at ¶ 24.) Jennings used this money to purchase a certificate of deposit (CD). (*Id.*) Jennings then "borrowed against the CD" and returned the money to On Call. (*Id.*)

In total, the Funds claim $702,910.49 against Jennings,[5] plus interest.[6] (*Id.* at ¶ 25.)

### 2. The Court Will Grant Summary Judgment on the Funds' Claim for Breach of Fiduciary Duty Under ERISA

ERISA[7] requires that "a fiduciary . . . discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ." 29 U.S.C. § 1104(1)-(A)(i). ERISA provides

---

[5] The Court derives this figure by adding (1) $658,656.50, the "Total" amount that the Funds claim for Count I ("Fringes") and (2) $44,253.99, the "Total" amount that the Funds claim for Count II ("Wage Deductions") (*see* ECF No. 39 at ¶ 25). According to the Amended Complaint, "Fringes" represent On Call's obligation to provide pension, medical, annuity, and apprenticeship payments to the Funds, while "Wage Deductions" constitute money withheld from employee paychecks to pay for union dues. (*See* ECF No. 17.)

[6] The Funds claim a *per diem* interest, beginning on September 18, 2017, of $88.62 on Count I and $10.95 on Count II. *(See id.).*

[7] "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)) (internal quotation marks omitted). ERISA accomplishes these goals by "establish[ing] standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." *Edmonson*, 725 F.3d at 413 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (internal quotation marks omitted). Specifically, "ERISA defines the circumstances under which a person or entity is a fiduciary, sets forth the duties of these fiduciaries, and provides various causes of action designed to promote the enforcement of these duties." *Edmonson*, 725 F.3d at 413.

that "[a] fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106. ERISA further provides that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries [by ERISA] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ." 29 U.S.C. § 1109.

Under ERISA, a person acts as a fiduciary "to the extent . . . [s]he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ." 29 U.S.C. § 1002(21)(A). As the Third Circuit has explained, "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)). Thus, "a person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan." *In re Unisys*, 579 F.3d at 228 (internal quotation marks omitted) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 527 (1996)).

To determine whether an individual who failed to make required employee fringe benefit contribution payments was acting as a fiduciary under ERISA, this Court must determine "(1) whether the unpaid contributions were plan assets; and (2) whether [the individual] exercised any control or authority over the management or disposition of such assets." *Laborers' Combined Funds of W. Pennsylvania v. Molinaro Corp.*, 234 F. Supp. 3d 660, 665 (W.D. Pa. 2017) (citing *PMTA–ILA Containerization Fund v. Rose*, No. CIV. A. 94-5635, 1995 WL 461269, at *4 (E.D. Pa. Aug. 2,

11

1995)); *Local Union No. 98 Int'l Bhd. of Elec. Workers v. RGB Servs., LLC*, No. CIV.A. 10-3486, 2011 WL 292233, at *5 (E.D. Pa. Jan. 28, 2011); *Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. World Transp., Inc.*, 241 F. Supp. 2d 499, 505 (E.D. Pa. 2003); *Carpenters Combined Funds ex rel. Klein v. Klingman*, No. 2:10-CV-63, 2011 WL 92083, at *4 (W.D. Pa. Jan. 11, 2011). "Both elements must be proven in turn; if the unpaid contributions are determined not to be plan assets, no liability can attach to the individual defendants." *RGB Servs.*, 2011 WL 292233, at *5 (internal quotation marks omitted) (quoting *Roofers Local 30 Combined Welfare Fund v. Lentz McGrane, Inc.*, Civ. A. No. 03–4187, 2005 WL 425582, at *3 (E.D. Pa. Feb. 21, 2005)).

"[T]o determine whether unpaid contributions are 'plan assets' under ERISA, '[c]ourts strictly look to the language of the contract or the trust agreement.'" *Lentz McGrane*, 2005 WL 425582, at *3 (quoting *Molinaro*, 234 F. Supp. 3d at 665 (holding that unpaid benefit contributions were "plan assets" because contract contained "unambiguous language that gives rise to contractual obligations for payment of money due . . . ."); *Bricklayers & Allied Craftworkers Local 1 of PA/DE v. Penn Valley Tile, Inc.*, 175 F. Supp. 3d 487, 495 (E.D. Pa. 2016) (holding that the unpaid contributions were "plan assets" because the applicable CBA explicitly provided that contributions were "plan assets"); *Klingman*, 2010 WL 3432837, at *3 (holding that unpaid benefit contributions constituted "plan assets" and noting that "it is well-settled law that courts must look to the language of the contract or trust agreement to determine whether unpaid contributions are 'plan assets' under the [ERISA] statute.")

"Where the operative agreement contains language to the effect that any payments 'due and owing' or 'accrued' to a fund are vested in that fund, then those payments due and owing

constitute 'plan assets' within the meaning of ERISA." *Carpenters Combined Fund, Inc. by Klein v. Lucci,* No. CV 13-1287, 2017 WL 4023317, at *9 (W.D. Pa. Sept. 13, 2017) (quoting *Molinaro,* 2017 WL 635361, at *3.)

### i.    The Unpaid Benefit Contributions Were "Plan Assets"

The Court finds that the unpaid benefit contributions were "plan assets" as a matter of law. The Trust Agreements provide that "[n]o Employer obligated to pay contributions shall have any right, title or interest to any sum payable by such Employer to the Fund, but not yet paid to the Fund" and specifies that "[t]itle to all monies pay into and/or *due and owing the Fund shall be vested in the Fund and/or its Trustees.*" ("Agreement and Declaration of Trust," ECF No. 40-6 at 8; "Trust Agreement and Pension Plan," ECF No. 40-7; *see also* ECF No. 39 at ¶ 5) (emphasis added). Therefore, at the moment the benefit contributions became due, they were "plan assets" under the plain language of the Trust Agreements. *See, e.g., Lucci,* 2017 WL 4023317, at *9 (holding that unpaid benefit contributions were "plan assets" when operative agreement stated that payments "due and owing" are vested in the fund); *Molinaro,* 234 F. Supp. 3d at 665 (finding that unpaid benefit contributions were "plan assets" the "moment they became due" because the governing contract provided that title to the contributions vested with the fund once the contributions became "due and owing.").

### ii.    Jennings Was an ERISA Fiduciary

The Court finds that Jennings was an ERISA fiduciary as a matter of law. Jennings "exercised discretionary authority and control" over On Call's finances. (ECF No. 39 at ¶ 13.) Jennings paid all of On Call's bills, managed On Call's financials, and had exclusive authority to

determine which of On Call's bills would be paid and which would not be paid. (*Id.*) Furthermore, Jennings had the sole authority to remit benefit contributions to the Funds. (*Id.*) Therefore, the Court finds that Jennings was an ERISA fiduciary as a matter of law. *See, e.g., Penn Valley Tile*, 175 F. Supp. 3d at 495 (holding that business owner was an ERISA fiduciary when he was "responsible for remitting the contributions to the Funds [and] exercised exclusive control over th[e] plan assets."); *Molinaro*, 234 F. Supp. 3d at 666 (finding that president of corporation was an ERISA fiduciary because he "had discretionary authority and control over the management or disposition of the due and owing fringe benefit contributions.").

### iii.    Conclusion

The Court finds that the unpaid benefit contributions became "plan assets" once they became "due and owing." The Court further finds that Defendant Jennings was a "fiduciary" under ERISA. Thus, the Court finds that no reasonable jury could find that Jennings did not breach her fiduciary duties to the Funds. Therefore, the Court will grant summary judgment on the Funds' breach of fiduciary claim against Defendant Jennings.

### 3.    The Court Will Grant Summary Judgment on the Funds' Conversion Claim

"Under Pennsylvania law, conversion occurs where one deprives another of his right to property in, or use or possession of, a chattel, or otherwise interferes therewith, without consent or justification." *Richman ex rel. Inst. of Terrorism Research & Response, Inc. v. Perelman*, No. 953 EDA 2014, 2015 WL 3500537, at *7 (Pa. Super. Ct. Apr. 21, 2015) (citing *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 119 (Pa. Super. 2014)).

14

"A plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel at the time of the alleged conversion." *Pittsburgh Const. Co. v. Griffith*, 2003 PA Super 374, ¶ 19, 834 A.2d 572, 581 (2003) (internal citation marks omitted) (quoting *Chrysler Credit Corporation v. Smith*, 434 Pa. Super. 429, 643 A.2d 1098, 1100 (1994)).

"Money may be the subject of a conversion . . . [if] the plaintiff had a property interest in the money at the time of the alleged conversion." *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, No. 11-CV-2379, 2013 WL 3973975, at *21 (M.D. Pa. July 31, 2013) (quoting *Kia v. Imaging Sciences Intern. Inc.*, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010)).

The Court will grant summary judgment for the Funds on their conversion claim. It is undisputed that Jennings was the sole shareholder and President of On Call and "exercised discretionary authority and control" over On Call's finances. (ECF No. at ¶¶ 9, 13.) It is also undisputed that Jennings was obligated under the CBAs and Trust Agreements to remit benefit contributions back to the Funds (*id.* at ¶ 3) but that Jennings failed to do so. (*Id.* at ¶ 18.) Accordingly, the Court finds that no reasonable jury could find that Jennings did not deprive the Funds of their property interest in the benefit contributions once they became "due and owing." Therefore, the Court will grant summary judgment to the Funds on their conversion claim against Jennings.

### 4. Damages

"Under ERISA, 29 U.S.C. § 1132(g)(2), the award of interest, liquidated damages and reasonable attorneys' fees is mandatory." *Klingman*, 2011 WL 92083, at *8 (citing *Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161, 179 & n. 9 (3d Cir. 1999)). "Under the conversion

theory, damages are intended to compensate a plaintiff for actual loss." *Molinaro*, 234 F. Supp. 3d at 668 (citing *Klingman*, 2011 WL 92083, at *8). The Funds seek damages for both their ERISA claim and their conversion claim. The Court will review these damage claims below.

ERISA claim. The Funds seek $215,647.63 in principal; $142,407.37 in interest through September 30, 2017, and $185,568.22 in late charges and liquidated damages, for a subtotal of $543,623.22. (ECF No. 39 at ¶ 25.) In addition, the Funds seek; $114,342.08 in attorneys' fees (20% of the subtotal) and $691.20 in costs (*id*), for a total of $658,656.50. (*Id.*) In addition, the Funds claim $88.62 in *per diem* interest after September 18, 2017. *Id.*

Conversion claim. The Funds seek $26,653.08 in principal and $17,600.91 in interest, for a subtotal of $44,253.99. *Id.* In addition, the Funds claim $10.95 of *per diem* interest after September 18, 2017. (*Id.*)

### i.     The Court Finds that the Funds Are Entitled to the Damages They Seek

As noted above, Jennings failed to file a responsive Concise Statement of Material Facts or respond in any manner to the Funds' motion for summary judgment. Similarly, Jennings has failed to challenge, refute, or question the Funds' damages calculations. The Court notes that the Funds have supported their damage calculations by proper affidavits and appropriate citations to the governing Trust Agreements and CBAs. *See, e.g.,* ECF No. 40-14 ("Amounts Owed by On Call Flagging, Inc. to the Laborer Funds"); ECF No. 40-2 ("Affidavit of Dawn A. Botsford"); ECF No. 40-6 ("Agreement and Declaration of Trust"); ECF No. 40-7 ("Trust Agreement and Pension Plan"); ECF No. 40-1 ("Affidavit of Philip Ameris").

Therefore, the Court finds that the Funds are entitled to the damages they claim. *See Molinaro*, 234 F. Supp. 3d at 669 (finding that the plaintiff funds were entitled to the damages claimed when defendant failed to file a responsive concise statement of material facts and plaintiff funds "supported their damages claims with proper affidavits and proper citation to ERISA and relevant portions of the applicable CBAs and incorporated Trust Agreements.")

## B. Rummel's Motion for Summary Judgment

Before evaluating the merits of the Defendant Rummel's motion for summary judgment the Court will review the facts that the Court deems admitted due to the Funds' failure to respond to Rummel's Concise Statement of Material Facts.

### 1. Uncontested Facts[8]

Rummel worked as a bookkeeper/account for On Call from February 9, 2015 to October 6, 2015. (ECF No. 44 at ¶ 1.) Rummel compiled the monthly reports that stated the amount of employee fringe benefit contributions that On Call owed to the Funds, and sent the reports to Defendant Jennings "for payment to" the Funds. (*Id.* at ¶ 3.)

Rummel co-signed the checks that were paid to the Funds along with Defendant Jennings. (*Id.* at ¶ 4.) But Rummel never had the authority or the ability to issue a fringe benefit check without Jennings's signature. (*Id.* at ¶ 5.) Additionally, Rummel did not have an ownership interest in On Call. (*Id.* at ¶ 2.)

---

[8] The following facts are derived from Rummel's Concise Statement of Material Facts (ECF No. 44).

On Call paid the Funds "all the money" the Funds were owed "for the monthly reports" that Rummel prepared during her employment with On Call. (*Id.* at ¶ 6.)

## 2. The Court Will Grant Defendant Rummel's Motion for Summary Judgment

### i. The Court Will Grant Defendant Rummel's Motion for Summary Judgment on the Funds' ERISA Claim

The Court finds that Rummel was not a fiduciary under ERISA as a matter of law. As stated above, a person acts as a fiduciary "with respect to a plan to the extent . . . [s]he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . ." 29 U.S.C. § 1002(21)(A). Thus, "a person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan." *In re Unisys*, 579 F.3d at 228 (internal quotation marks and citations omitted). It is undisputed that Rummel did not have discretionary authority to issue fringe benefit checks to the Funds. (ECF No. 44 at ¶ 5.) Rummel merely prepared the reports. (*Id.* at ¶ 3.) While Rummel co-signed the checks, Jennings had the sole authority to issue them. (*Id.*) Accordingly, the Court finds that no reasonable jury could conclude that Rummel was a fiduciary within the meaning of ERISA. Therefore, the Court will grant summary judgment for Rummel on the Funds' ERISA claim against her.

### ii. The Court Will Grant Defendant Rummel's Motion for Summary Judgment on the Funds' Conversion Claim

As noted above, it is undisputed that Rummel did not have discretionary authority to issue benefit checks to the Funds. (ECF No. 44 at ¶ 5.) Furthermore, On Call paid the Funds all of

the required employee benefit contributions during Rummel's employment with On Call. (*Id.* at ¶ 6.) Therefore, the Court finds that no reasonable jury could conclude that Rummel interfered with the Funds' possessory interest in the employee benefit contributions. Therefore, the Court will grant summary judgment in favor of Rummel on the Funds' conversion claim against her.[9]

## VI. Conclusion

As explained above, the Court will grant summary judgment in favor of the Funds on their claims against Defendant Jennings. The Court will also grant summary judgment in favor of Defendant Rummel on the Funds' claims against her.

An appropriate order follows.

---

[9] The Court also notes that the Funds did not file a responsive concise statement of material facts or otherwise respond to Rummel's motion for summary judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABORERS' COMBINED FUNDS OF WESTERN PENNSYLVANIA, *et. al*, | ) ) ) | CIVIL ACTION NO. 2:15-1693 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| KATHLEEN JENNINGS, SHERI RUMMEL, and JAMES REDDEN, | ) ) ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 9th day of February 2018, upon consideration of the Funds' Motion for

Summary Judgment (ECF No. 37) and Defendant Rummel's Motion for Summary Judgment (ECF

No. 43), and in accordance with the accompanying Memorandum Opinion, **IT IS HEREBY**

**ORDERED** as follows:

1. The Court will **GRANT** the Funds' Motion for Summary Judgment (ECF No. 37) in its

   entirety.

   a. The Court directs the Clerk to enter judgment in favor of the Funds on their

      claims against Defendant Jennings (Counts I and Counts II).

   b. For Count I, the Court directs the Clerk to enter a judgment of $658,656.50, plus

      *per diem* interest of $88.62 after September 18, 2017.

   c. For Count II, the Court directs the Clerk to enter a judgment of $44,253.99, plus

      *per diem* interest of $10.95 after September 18, 2017.

2. The Court will **GRANT** Defendant Rummel's Motion for Summary Judgment (ECF No. 43) in its entirety.

3. Finally, the Court directs the Clerk to close the case.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**